**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARCIA A. HARRIS,

    Plaintiff,

v.

WELLS FARGO BANK, N.A.;
WORLD SAVINGS BANK, FSB;
WACHOVIA MORTGAGE, FSB;
UNKNOWN JOHN DOES;
UNKNOWN JANE DOES,

    Defendants.

Civil Action No. 16-3147 (ES) (JAD)

OPINION

**SALAS, DISTRICT JUDGE**

**I.    INTRODUCTION**

*Pro se* Plaintiff Marcia A. Harris brings this action against Defendants Wells Fargo Bank, N.A., World Savings Bank, FSB ("World"), and Wachovia Mortgage FSB ("Wachovia Mortgage") (collectively, "Wells Fargo")[1] in connection with a residential mortgage loan transaction and foreclosure action. Pending before this Court is Wells Fargo's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. No. 9, ("Def. Mov. Br.")). The Court has considered the parties' submissions and resolves Wells Fargo's motion without oral argument under Federal Rule of Civil Procedure 78(b). Because the Entire Controversy Doctrine, res judicata, and collateral estoppel bar Plaintiff's

---

[1]    World was the original mortgagee and note holder. (*See* Def. Mov. Br. at 2). According to Wells Fargo, World changed its name to Wachovia Mortgage as of December 31, 2007. (*Id.*) Wachovia Mortgage was then acquired and merged into Wells Fargo. (*Id.*)

Amended Complaint, the Court GRANTS Wells Fargo's motion and dismisses Plaintiff's Amended Complaint *with prejudice*.

## II. FACTUAL & PROCEDURAL BACKGROUND

On May 22, 2006, Plaintiff executed a note in favor of World in the amount of $543,000 (the "Note") and granted a mortgage (the "Mortgage") to World, secured by property located at 477 Elkwood Terrace, Englewood, New Jersey 07631 (the "Property") (collectively the "Loan"). (D.E. No. 8, Am. Compl. ¶¶ 17-18; *see also* D.E. No. 9-2, ("Bender Cert."), Ex. C at 83-88, 90-104 (attaching copies of the Note and Mortgage)).[2] Plaintiff defaulted on the Loan on or about August 15, 2009. (D.E. No. 1-1, Ex. 4 ("State Compl.")) ¶ 1-j).

Following Plaintiff's default, Wells Fargo filed a complaint for foreclosure on or about September 24, 2010, in the Superior Court of New Jersey, Chancery Division, Bergen County, seeking to enforce the Note and Mortgage and foreclose upon the Property ("State Foreclosure Action"). (State Compl.; *see also* Bender Cert., Ex. A). On July 24, 2012, Wells Fargo filed a motion for summary judgment in the State Foreclosure Action, which the state court granted. (Bender Cert. at Exs. C-D). On July 10, 2015, Plaintiff filed a motion to default Wells Fargo for not allowing her to rescind her loan on May 9, 2015. (*Id.*, Ex. E; D.E. 1-1, Ex. 6 ("Notice of Rescission") at 43-44). On September 25, 2015, however, Plaintiff withdrew her motion. (*Id.*, Ex. F). Wells Fargo applied for entry of final judgment in the State Foreclosure Action on March 28, 2016. (*Id.*, Ex. G). The state court granted final judgment of foreclosure in favor of Wells Fargo on July 8, 2016. (Bender Cert. Ex. I ("State Final Judgment")).

---

[2] "[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

2

On June 1, 2016, Plaintiff filed a Complaint in the District Court for the District of New Jersey against Wells Fargo relating to the purported securitization of the Loan. (*See generally* Compl.). On August 24, 2016, Plaintiff filed an Amended Complaint containing the same six counts from her original Complaint. (*See generally* Compl. & Am. Compl.). Count One seeks damages for alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617. (Am. Compl. ¶¶ 47-57). Count Two alleges violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, and Regulation Z, 12 C.F.R. § 1026. (*Id.* ¶¶ 58-75). Count Three alleges intentional and/or negligent infliction of emotional distress. (*Id.* ¶¶ 76-83). Count Four seeks damages and equitable relief for alleged negligent misrepresentation. (*Id.* ¶¶ 84-95). Count Five seeks damages and equitable relief for Wells Fargo's alleged negligence in handling her loan payments. (*Id.* ¶¶ 96-102). Count Six seeks damages for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. (*Id.* ¶¶ 63, 103-20).

On September 9, 2016, Wells Fargo moved to dismiss Plaintiff's Amended Complaint under Rules 12(b)(1) and 12(b)(6). (Def. Mov. Br. at 1, 4-6). Plaintiff opposed Wells Fargo's motion on September 19, 2016. (D.E. No. 10, ("Pl. Opp. Br.")). Wells Fargo filed a reply in further support of its motion on September 26, 2016. (D.E. No. 11 ("Def. Reply Br.")). The motion is now ripe for resolution.

## III.  LEGAL STANDARD

Wells Fargo seeks to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. Each requires a different standard of review. *See Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999) (citing cases).

### A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

Federal courts have limited jurisdiction and are permitted to adjudicate cases and controversies only as permitted under Article III of the Constitution. *See* U.S. Const. art. III, § 2; *see also Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998) ("The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief."). Unless affirmatively demonstrated, a federal court is presumed to lack subject matter jurisdiction. *See Ridge*, 150 F.3d at 323 (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)). The party seeking to invoke federal jurisdiction has the burden of persuasion to establish subject-matter jurisdiction. *See Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

A motion to dismiss under Rule 12(b)(1) "attacks . . . the right of a plaintiff to be heard in Federal court." *Kurtzman*, 45 F. Supp. 2d at 428. When ruling on such a motion, a distinction must be made between a facial and factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the Rule 12(b)(1) motion is a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). On the other hand, when the Rule 12(b)(1) motion is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

Here, Wells Fargo's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is a factual attack because it challenges the "actual facts" that support jurisdiction, and

not merely how those facts were pleaded. *See U.S. ex rel. Atkinson*, 473 F.3d at 514 (3d Cir. 2007). Accordingly, the Court may "review evidence outside the pleadings" in determining whether subject matter jurisdiction exists. *Id.*

### B. Rule 12(b)(6) – Failure to State a Claim

"Rule 12(b)(6) requires a district court to dismiss a complaint if it fails to state a cognizable legal claim." *Ulferts v. Franklin Res., Inc.*, 554 F. Supp. 2d 568, 572 (D.N.J. 2008). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Additionally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

5

Finally, courts must construe complaints liberally in favor of a *pro se* plaintiff. *See Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("Our policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."). That said, *pro se* litigants still "must follow the rules of procedure and the substantive law." *Thompson v. Target Stores*, 501 F. Supp. 2d 601, 603 (D. Del. 2007); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## IV. DISCUSSION

Wells Fargo moves to dismiss Plaintiff's Amended Complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction, and additionally, under Rule 12(b)(6) for failure to state a claim for which relief may be granted. (Def. Mov. Br. at 4-5). Specifically, Wells Fargo argues that this Court should dismiss Plaintiff's Amended Complaint because it is barred by the *Rooker-Feldman* doctrine, the *Younger* doctrine, and the *Colorado River* doctrine. (*Id.* at 1, 7-12). Additionally, Wells Fargo argues that this Court should dismiss Plaintiff's Amended Complaint because it is barred by the Entire Controversy Doctrine, res judicata, and collateral estoppel. (*Id.* at 1, 12-16). The Court will analyze each argument in turn.[3]

---

[3] Because the Court finds that all of Plaintiff's claims are barred by the Entire Controversy Doctrine, res judicata, and collateral estoppel, it need not address Wells Fargo's argument that Plaintiff "has failed to meet the well-established pleading standards for any claims." (*See* Def. Mov. Br. at 17).

6

### A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

#### 1. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars federal district courts from hearing cases "that are essentially appeals from state-court judgments," such that "a favorable decision in federal court would require negating or reversing the state-court decision." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165, 170 n.4 (3d Cir. 2010). The Third Circuit has specifically held that the *Rooker-Feldman* doctrine bars federal courts from providing relief that would invalidate a state court foreclosure decision. *See, e.g.*, *Cuevas v. Wells Fargo Bank, N.A.*, 643 F. App'x 124, 126-27 (3d. Cir. 2016).

For the *Rooker-Feldman* doctrine to apply, four requirements must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co.*, 615 F.3d at 166 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Here, the first, second, and fourth prongs are easily met: Plaintiff lost in the State Foreclosure Action; Plaintiff complains of injuries caused by the state-court judgment; and Plaintiff invites this Court to review and reject the state court judgment in favor of Wells Fargo. (*See* State Final Judgment).

The third prong, however, is not satisfied. Plaintiff filed her Complaint in this Court on June 1, 2016, before the state court entered final judgment on July 8, 2016. (Compl.; State Final Judgment). To be sure, although the state court entered summary judgment against Plaintiff before she filed her Complaint here, that entry of summary judgment alone does not render the state judgment final to permit application of the *Rooker-Feldman* doctrine. *See Farah v. Lasalle Bank*

*Nat'l Assoc.*, No. 15-2602, 2016 WL 1162644, at *7 (D.N.J. Mar. 23, 2016) ("The final judgment, for purposes of *Rooker-Feldman*, is not the summary judgment rendering the foreclosure uncontested, but the actual final judgment of foreclosure. Such a final judgment of foreclosure . . . determines both the right to foreclose and the amount due on the mortgage.").

In *Exxon Mobil Corp.*, the Supreme Court warned against expanding the *Rooker-Feldman* doctrine "beyond the contours of the *Rooker* and *Feldman* cases," because doing so would "overrid[e] Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and supersed[e] the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." 544 U.S. at 283. Indeed, the Supreme Court clarified that "neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id.* at 292. Rather, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Id.* at 293. Thus, the *Rooker-Feldman* doctrine does not apply in this context.

### 2. Younger Abstention Doctrine

Under the *Younger* abstention doctrine, "district courts must abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010). In 2013, the Supreme Court clarified the scope of the *Younger* doctrine, holding that abstention is appropriate in only three "exceptional" situations: (i) state criminal prosecutions; (ii) civil enforcement proceedings; and (iii) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *Sprint Commc'ns., Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013); *see also In re One2One*

*Commc'ns., LLC*, 805 F.3d 428, 440 (3d Cir. 2015) ("In [*Sprint*] . . . the Court refused to extend the three 'exceptional' situations where *Younger* abstention is appropriate, reaffirming Chief Justice Marshall's early and famous assertion of federal courts' obligation to hear and decide cases within their jurisdiction."). An example of a civil enforcement proceeding is "a civil action in state court to abate the showing of obscene movies which was in aid of and closely related to [the State's] criminal statutes." *Edelglass v. New Jersey*, No. 14-0760, 2015 WL 225810, at *10 (D.N.J. Jan. 16, 2015) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975)). "Civil proceedings in furtherance of a state court's ability to perform judicial functions are exemplified by contempt orders." *Id.* (citing *Juidice v. Vail*, 430 U.S. 327 (1977)).

Wells Fargo argues that a federal court "'must abstain' from exercising jurisdiction when: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." (Def. Mov. Br. at 9) (quoting *Lazaridis*, 591 F.3d at 670). These conditions stem from the Supreme Court's decision in *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). In *Sprint*, however, the Supreme Court explained that

> the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the exception, not the rule. In short, to guide other federal courts, we today clarify and affirm that *Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*,[4] but no further.

134 S. Ct. at 593-94. The Court also explained that the *Middlesex* conditions "were not dispositive" but were instead "*additional* factors appropriately considered by the federal court

---

[4] *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989).

9

before invoking *Younger*." *Id.* at 593 (emphasis in original). Wells Fargo neither addresses the Supreme Court's decision in *Sprint*, nor cites any post-*Sprint* authority. (*See generally* Def. Mov. Br. at 9-10; Def. Reply Br. at 3-4).

Here, the State Foreclosure Action "is neither a criminal nor a civil enforcement proceeding, nor is it uniquely in furtherance of the state court's ability to perform its judicial function." *See Hernandez v. Federal Nat'l Mortg. Ass'n*, No. 14-7950, 2015 WL 3386126, at *2 (D.N.J. May 26, 2015) (declining to apply *Younger* where state action was an "ongoing state foreclosure action"). Indeed, as another district court observed, "[s]ince *Sprint*, courts have declined to apply the *Younger* doctrine in the context of state foreclosure proceedings." *Id.* (citing *Carrier v. Bank of Am., N.A.*, No. 12-0104, 2014 WL 356219, at *1 (D.N.J. Jan. 31, 2014), *aff'd sub nom. Carrier v. Bank of Am. NA*, 592 F. App'x 135 (3d Cir. 2015) (declining to apply *Younger* despite existence of pending foreclosure action); *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 643-47 (D. Md. Feb. 3, 2015) (finding that *Younger* did not apply to foreclosure proceeding in light of *Sprint*)). Accordingly, the Court declines to abstain under the *Younger* doctrine.

### 3. Colorado River Doctrine

Under the *Colorado River* doctrine, a federal court may abstain from hearing a case "when there is a parallel ongoing state court proceeding." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (citing C*olo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). "Whether abstention is appropriate is a two-part inquiry. The initial question is whether there is a parallel state proceeding that raises substantially identical claims [and] nearly identical allegations and issues." *Id.* at 307. Once the court determines that proceedings are parallel, the court assesses six factors to determine whether "extraordinary

10

circumstances" warrant abstention: "(1) which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999). In cases involving parallel federal and state foreclosure actions, "[t]his district has repeatedly invoked *Colorado River* to abstain from hearing what amount to collateral attacks on pending state foreclosure proceedings." *Dickerson v. Wells Fargo Bank, N.A.*, No. 15-3747, 2016 WL 820989, at *3 (D.N.J. Mar. 2, 2016).

Wells Fargo characterizes Plaintiff's Amended Complaint as "nothing more than a collateral attack on the Foreclosure Action she has already lost." (Def. Mov. Br. at 1). First, Wells Fargo argues that the State Foreclosure Action and this action are parallel proceedings because they both involve the same parties, claims, and issues. (*Id.* at 11). Second, Wells Fargo states that "the six factors weigh in favor of abstention," arguing (among other things) that the state court obtained jurisdiction over the matter first, that this action implicates "[an] important state interest," and that "there is no reason to believe that the state court was an inadequate forum for reviewing any of [Plaintiff's] claims." (*Id.* at 12).

The Court declines to apply the *Colorado River* abstention doctrine. As a threshold matter, the State Foreclosure Action does not appear to be a "parallel ongoing state court proceeding" because the state court has already entered final judgment. (*See* State Final Judgment); *Nationwide*, 571 F.3d at 307. Tellingly, each case cited by Wells Fargo involved an *ongoing* state court action—that is, when the district court decided to abstain under the *Colorado River* doctrine, no final judgment had been entered in the parallel state court proceeding. *See Ruffolo v. HSBC Bank USA, N.A.*, No. 14-638, 2014 WL 4979699, at *2-3 (D.N.J. Oct. 3, 2014) ("Because this

11

Court will not interject itself into ongoing state court proceedings and possibly force an impermissible direct contradiction of any final judgment in the Foreclosure Action, the Court must abstain from deciding Plaintiffs' claims pursuant to *Colorado River*."); *DiPietro v. Landis Title Co.*, No. 11-5110, 2012 WL 2116404, at *3 (D.N.J. June 11, 2012) ("[B]ecause this Court cannot interject itself into ongoing state court proceedings, the Court must dismiss his case in its entirety."); *St. Clair v. Wertzberger*, 637 F. Supp. 2d 251, 255 (D.N.J. 2009) ("If the Court were to find that defendants violated the FDCPA by improperly instituting the state foreclosure action, such a finding would be an impermissible direct contradiction of the final judgment of foreclosure, if it is entered.").

Furthermore, while the parties, claims, and issues are substantially the same, the issue of rescission was never adjudicated on the merits in the State Foreclosure Action because Plaintiff withdrew that motion before entry of final judgment. (*See* Bender Cert., Ex. F). Finally, the Court adds that the *Colorado River* factors are to be "heavily weighted in favor of the exercise of jurisdiction." *Nationwide*, 571 F.3d at 308. Based on the foregoing, the Court declines to abstain under the *Colorado River* doctrine.

As the Court declines to dismiss Plaintiff's Amended Complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction, it will proceed to analyze the issues under Rule 12(b)(6).

### B. Rule 12(b)(6) – Failure to State a Claim

#### 1. Entire Controversy Doctrine

The Entire Controversy Doctrine "requires that a person assert in one action all related claims against a particular adversary or be precluded from bringing a second action based on the omitted claims against that party." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008). The doctrine has three purposes: (i) complete and final disposition of cases through avoidance of piecemeal

12

decisions; (ii) fairness to parties in an action and to others with a material interest in it; and (iii) efficiency and avoidance of waste and delay. *Id.* "Federal courts in New Jersey apply the Entire Controversy Doctrine to subsequent actions before them where the prior case reached a judgment in a New Jersey state court." *Burke v. Health Scis. Const. Grp., Ltd.*, No. 10-0073, 2011 WL 1255403, at *3 (D.N.J. Mar. 30, 2011). To be sure, the Entire Controversy Doctrine "does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action." *Mullarkey*, 536 F.3d at 229.

Here, each of Plaintiff's claims alleges wrongdoing on the part of Wells Fargo during the events leading up to the State Foreclosure Action. To reiterate, Plaintiff alleges intentional and/or negligent infliction of emotional distress, negligent misrepresentation, negligence, and violations of RESPA, TILA, and the FDCPA. Each claim arises from the same set of operative facts giving rise to the State Foreclosure Action and concerns issues previously adjudicated in that action, namely, the validity of the Loan, Wells Fargo's conduct in the creation of and performance under the Loan, and Wells Fargo's right to foreclose. Thus, Plaintiff "knew, or should have known about" each claim during the State Foreclosure Action. *See Napoli v. HSBC Mortg. Servs.*, No. 12-222, 2012 WL 3715936, at *3 (D.N.J. Aug. 27, 2012).

To the extent Plaintiff argues that her rescission claim in Count Two is not barred because the state court never ruled on it (*see* Pl. Opp. Br. at 4, 10), such argument is without merit. On May 9, 2015, Plaintiff moved in the State Foreclosure Action to default Wells Fargo for failing to rescind the Loan, then voluntarily withdrew her motion two months later. (*See* Bender Cert. Exs. E-F; Notice of Rescission). After Plaintiff withdrew her rescission motion, the state court entered final judgment. (State Final Judgment). Thus, because Plaintiff knew about her rescission claim before entry of final judgment in the State Foreclosure Action, she cannot raise it here. *See William*

13

*Blanchard Co. v. Beach Concrete Co.*, 150 N.J. Super. 277, 292-93 (App. Div. 1977) ("[T]he application of the doctrine requires that a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding.").[5]

### 2. Res Judicata and Collateral Estoppel

Under Third Circuit law, the "general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action. *Univ. of Md. v. Peat Marwick Main & Co.*, 923 F.2d 265, 275-76 (3d Cir. 1991). "Res judicata acts as a bar to relitigation of an adjudicated claim between parties and those in privity with them." *Fairbank's Capital Corp. v. Milligan*, 234 F. App'x 21, 23 (3d Cir. 2007).[6] "Collateral estoppel, also known as issue preclusion, refers to the preclusive effect of a judgment on the merits of an issue that was previously litigated or that could have been litigated." *Id.* at 23.[7] Finally, "[t]he Full Faith and Credit Act, 28 U.S.C. § 1783 . . . requires the federal court to give

---

[5]   Furthermore, even if the Court could entertain Plaintiff's rescission claim, the Court notes that such claim would be barred by the three-year time limit under 15 U.S.C. § 1635(f). *See Farah*, 2016 WL 1162644, at *11 ("[The] three-year limitation is not a statute of limitation, barring untimely suits; it 'govern[s] the life of the underlying right.' . . . Thus 'the Act permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run.'" (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 413, 417 (1998))). Consequently, Plaintiff's equitable-tolling arguments would likely be rejected as a matter of law.

[6]   Res judicata applies when: (i) the judgment in the first action is valid, final, and on the merits; (ii) the parties in both actions are the same or are in privity with each other; and (iii) the claims in the second action arise from the same transaction or occurrence as the claims in the first action. *Dennis v. MERS/Merscorp Mortg. Elec. Registration Sys., Inc.*, No. 11-4821, 2011 WL 4905711, at *2 (D.N.J. Oct. 13, 2011).

[7]   Collateral estoppel applies when the following four factors are met: (i) the identical issue was previously adjudicated; (ii) the issue was actually litigated; (iii) the previous determination was necessary to the decision; and (iv) the party being precluded from relitigating the issue was fully represented in the prior action. *Id.*

14

the same preclusive effect to a state-court judgment as another court of that State would give." *Exxon Mobil Corp.*, 544 U.S. at 293.

For the reasons discussed with respect to the Entire Controversy Doctrine, the Court finds that Plaintiff's Amended Complaint is barred by res judicata and collateral estoppel. *See Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) ("New Jersey's Entire Controversy Doctrine and traditional res judicata principles are blood relatives. The Entire Controversy Doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles.").

## V. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff fails to state a claim for which relief may be granted under Rule 12(b)(6), as her claims are barred under the Entire Controversy Doctrine, res judicata, and collateral estoppel. Accordingly, the Court GRANTS Wells Fargo's Motion to Dismiss *with prejudice*. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**